## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-20041-COOKE/DAMIAN

BRADLEY JUDAS RODRIGUEZ,

      Plaintiff,

vs.

SOCIAL SECURITY ADMINISTRATION,

      Defendant.

_____/

## REPORT AND RECOMMENDATION ON
## PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS [ECF NO. 28] AND CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF NOS. 29 AND 37]

THIS CAUSE is before the Court on Plaintiff, Bradley Judas Rodriguez's ("Plaintiff" or "Mr. Rodriguez"), Motion for Judgment on the Pleadings [ECF No. 28] and Request for Oral Argument [ECF No. 46], and the parties' Cross-Motions for Summary Judgment [ECF Nos. 29 and 37]. Mr. Rodriguez seeks the reversal and remand of the decision of the Administrative Law Judge ("ALJ") denying his claim for Disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This matter was referred to the undersigned by the Honorable Marcia G. Cooke, United States District Judge. [ECF No. 48]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has reviewed the parties' briefing [ECF Nos. 38, 41, 43, 45, 49, and 50], the administrative record [ECF No. 23], and all relevant authorities, and is otherwise fully informed in the premises. For the reasons that follow, the undersigned recommends that Plaintiff's Motion for Judgment on the Pleadings [ECF No. 28], Request for Oral Argument

[ECF No. 46], and Motion for Summary Judgment [ECF No. 29] be denied and that the Defendant's Motion for Summary Judgment [ECF No. 37] be granted.

## I.   BACKGROUND

### A.   *Mr. Rodriguez's Claim for Benefits*

Mr. Rodriguez alleged disability beginning on September 1, 2017, due to a brain injury, depression, and bipolar disorder. (R. 16).[1] Mr. Rodriguez was 32 years old on his alleged disability onset date, such that he falls within the definition of a younger individual (age 18–49). *Id.* He is presently homeless, and he has at least a high school education and is able to communicate in English. *Id.*

### B.   *Mr. Rodriguez's Testimony Regarding His Disabilities*

At the hearing before the ALJ, held on November 6, 2019, Mr. Rodriguez appeared *pro se.* (R. 37–38).  He testified that he takes a lot of medications due to his brain injury and that he has been diagnosed with Post-Traumatic Stress Disorder ("PTSD") and bipolar disorder. *Id.* at 51. Mr. Rodriguez also stated that he is epileptic and experiences drowsiness due to the side effects of medications taken for the epilepsy. *Id.* He further testified that he takes additional medications for migraines, anxiety, and depression. (R. 52–53).

According to Mr. Rodriguez, a typical day starts around 5:30 a.m. (R. 54). While getting ready for the day, he has difficulties remembering where he left his toothbrush and hygiene products. *Id.* He explained that after breakfast, he participates in devotional worship and completes his assignments at the Miami Rescue Mission Homeless Shelter ("Miami

---

[1] All references to "R." refer to the transcript of the Social Security Administration filed on July 19, 2021. [ECF No. 23]. The page numbers listed in this document refer to the bold numbers found on the lower right-hand corner of each page of the transcript, as opposed to those assigned by the Court's electronic docketing system or any other page numbers.

Rescue"), where he has resided for over a year and a half. (R. 55). Mr. Rodriguez described his assignments at Miami Rescue to include housekeeping, which entails picking up any debris around the block and breaking down cardboard boxes. *Id.* After completing his assignments, Mr. Rodriguez attends a group session, and, after lunch, he usually takes a shower and a nap because all the medications make him "very drowsy." (R. 56). After taking a nap, Mr. Rodriguez does an hour of cardio exercise, including push-ups, which he tries to do about three times a week. *Id.* Mr. Rodriguez also testified that his exposure to the sun gets him very imbalanced because he has a metal implant in his head due to his traumatic brain injury. (R. 57). After dinner, Mr. Rodriguez attends another group session and a sermon in Spanish in the evening. *Id.* Before going to sleep, he watches TV in the recreational room at Miami Rescue. *Id.*

As for his past relevant employment, Mr. Rodriguez testified that he last worked as a line cook at a burger place for about six months in 2017 and that he was terminated due to constant errors. (R. 46–47). In 2014, Mr. Rodriguez worked as a carpenter helper for about a year and a half. (R. 48). In 2010, he worked as a forklift operator, and, in around 2004 or 2005, he worked as a sales associate at a home improvement store for about six months. (R. 49). Mr. Rodriguez testified that he has been unable to hold jobs for very long because he would make too many mistakes and would get fatigued and drowsy from the medications for his brain injury. (R. 50).

### C.   *Expert Opinions Regarding Mr. Rodriguez*

The record contains treatment notes from numerous doctors, social workers, and other professionals regarding Mr. Rodriguez's conditions. Treatment notes from one of Mr. Rodriguez's treating physicians, Morton S. Corin, M.D., from January 2015, indicate that

Mr. Rodriguez complained of headaches, dizziness, difficulty with concentration, anxiety, depression, and mood instability for a period of approximately two years. (R. 370). Dr. Corin's observations indicate that Mr. Rodriguez suffered head trauma in 2009 with a left frontotemporal skull fracture and epidural hematoma for which he had surgery but that there was no apparent neurologic sequel or reason to suspect that he had developed difficulties in the past two years related to that traumatic head injury and surgery. (R. 372).

Mr. Rodriguez also saw a licensed psychologist, John Egbeazien Oshodi, Ph.D., in February 2015 for a mental status evaluation. (R. 374). According to the psychological evaluation, Mr. Rodriguez's speech pattern and quality of thinking were clear and coherent but marked with some degree of stuttering and word substitution. (R. 376). His overall thought process and content were logical but poorly goal directed as he was easily distracted by some degree of forgetfulness. *Id.* Mr. Rodriguez did not present any psychotic or delusional difficulties during the evaluation; however, his recent memory was poor as he could only repeat two out of six words after a five-minute interval. *Id.* Dr. Oshodi diagnosed Mr. Rodriguez with depressive disorder due to medical condition with depressive features, an unspecific communication disorder, and PTSD. (R. 377).

A more recent psychological evaluation conducted by Beatriz Amador, Psy.D, and dated February 5, 2020, indicates that Mr. Rodriguez suffered two traumatic brain injuries in 2009 and 2016 after he was allegedly assaulted and struck on the head. (R. 755). Dr. Amador diagnosed Mr. Rodriguez with an unspecified neurocognitive disorder and major depressive disorder. (R. 759).

Another physician, Dr. Olimpia Carbunar, M.D., who treated Mr. Rodriguez in July 2018, noted that he suffered from chronic headaches, PTSD, bipolar affective disorder, and

memory/concentration loss following a traumatic brain injury, and that he had a previous history of drug abuse. (R. 465). In a medical summary report prepared at the New Horizons Community Mental Health Center, dated September 5, 2018, the medical staff noted that Mr. Rodriguez was diagnosed with adjustment disorder with mixed anxiety and depressed mood and had a history of several traumatic brain injuries which caused cognitive and behavioral symptoms. (R. 501). The medical report also indicates that Mr. Rodriguez experiences depression, anxiety, concentration difficulties, memory loss, and auditory hallucinations. (R. 506). He also has difficulty learning new tasks and needs constant assistance. *Id.*

At the hearing before the ALJ, an impartial vocational expert testified that a person with Mr. Rodriguez's same age, education, work experience, and Residual Functional Capacity ("RFC"), who can also perform simple routine tasks and can make simple work-related decisions, cannot perform any of his past work except for a sales attendant classified as a light unskilled job. (R. 62). When asked by the ALJ whether jobs existed in the national economy for a person with Mr. Rodriguez's age, education, work experience, and RFC, the vocational expert provided three representative occupations such a person could perform: kitchen helper, dining room attendant, and hospital cleaner. (R. 63).

Similarly, the vocational expert testified that a person with Mr. Rodriguez's same age, education, work experience, and RFC, but who requires a frequent supervisor to make simple routine tasks and frequent supervision to make simple work-related decisions, could not perform any of his past work. *Id.* The vocational expert could not provide any representative occupations that such a person with those limitations could perform in the national economy. *Id.* The vocational expert explained that if frequent supervision was needed on an ongoing

basis, the only type of work that such a person could perform would be a sheltered workshop type of environment which would not be considered substantial gainful activity. (R. 63–64).

## II.   PROCEDURAL HISTORY

Mr. Rodriguez applied for DIB and SSI benefits on September 1, 2017. (R. 24). His applications were initially denied on May 23, 2018, and again, upon reconsideration, on September 21, 2018. (R. 130–35, 138–57). Mr. Rodriguez then requested a hearing, which was held before an ALJ on November 6, 2019. (R. 150–53, 189). On April 7, 2020, the ALJ issued a decision finding that Mr. Rodriguez was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. (R. 17). Mr. Rodriguez requested review of the ALJ's decision. (R. 8). On October 13, 2020, the Appeals Council denied his request for review, rendering the ALJ's decision as the Social Security Commissioner's "final" determination. (R. 1–5). *See* 42 U.S.C. § 405(g); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Mr. Rodriguez now seeks review of the ALJ's decision. Having exhausted his administrative remedies, on January 6, 2021, Mr. Rodriguez filed a *pro se* Complaint and requested the assistance of counsel. [ECF No. 1]. *See* 42 U.S.C. § 405(g). After *pro bono* counsel entered an appearance on his behalf, [ECF No. 15], on May 12, 2021, Mr. Rodriguez filed a Second Amended Complaint, now the operative pleading in this action. [ECF No. 17]. Thereafter, Mr. Rodriguez filed a Motion for Judgment on the Pleadings on September 17, 2021, [ECF No. 28], and a Motion for Summary Judgment on September 20, 2021 [ECF No. 29].

Defendant, Kilolo Kijakazi, Acting Commissioner of the SSA (the "Commissioner"), filed a Motion for Summary Judgment and a Response to Mr. Rodriguez's Motion for

Summary Judgment on November 19, 2021. [ECF No. 37]. The Commissioner also filed a Response to Mr. Rodriguez's Motion for Judgment on the Pleadings on December 1, 2021. [ECF No. 38]. Mr. Rodriguez filed his Reply in support of the Motion for Summary Judgment and Motion for Judgment on the Pleadings on December 18, 2021, and January 7, 2022, respectively. [ECF No. 22]. On January 10, 2022, Mr. Rodriguez filed a Request for Oral Argument on his Motion for Judgment on the Pleadings. [ECF No. 46].

All of these Motions are fully briefed and ripe for adjudication.

### III.    THE ALJ'S DECISION

The ALJ concluded that Mr. Rodriguez is not disabled under Sections 216(i) and 233(d) of the Social Security Act based on the five-step process that must be used for evaluating whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1); *Frame v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015).[2]

At step one of this process, the ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). *Id*. SGA is defined as work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. Generally, if a claimant's labor earnings are above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 C.F.R. §§ 404.1574-75, 416.974-5. If a claimant can engage in SGA, the ALJ will find that he is not disabled. 20 C.F.R. §§ 404.1571, 416.971.

At step two, the ALJ must determine whether the claimant has either a medically determinable impairment ("MDI") or a combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is severe if it

---

[2] Throughout this section, the undersigned cites to the appropriate rules for DIB and SSI benefits and notes that the rules governing both are essentially identical.

significantly limits an individual's ability to perform basic work activities. *Id*. If the claimant does not have an MDI or combination of impairments that is severe, he is not considered disabled.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525-26; *see also* §§ 416.920(d), 416.925-26. If so, the claimant is disabled. *Id*. If not, the analysis proceeds to the next step. *Id*. Before considering step four, however, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). A claimant's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ must make this determination while stating "with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).

At step four, the ALJ must determine whether the claimant has the RFC to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Past relevant work means work performed (either in the manner claimant actually performed it or as it is generally performed in the national economy) within 15 years prior to the date claimant's disability must be established. 20 C.F.R. §§ 404.1560, 416.960. If the claimant has the RFC to do his past relevant work, he is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is unable to do any past relevant work, the analysis proceeds to the final step.

At the fifth and final step, the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the claimant can do other work, he is not disabled. *Id*. If he is unable to do other work, he is disabled. *Id*. At step five, the burden temporarily shifts to the Social Security Administration ("SSA") to show the existence of other jobs in the national economy that exist in significant numbers that the claimant can perform, given his impairments. 20 C.F.R. §§ 404.1512, 404.1560(c), 416.912, and 416.960(c). The ALJ makes this determination by considering both the Dictionary of Occupational Titles and testimony from an impartial vocational expert. *See Buckwalter*, 5 F.4th at 1321.

Regarding Mr. Rodriguez's claim for benefits, the ALJ found that: (1) Mr. Rodriguez has not engaged in SGA since the alleged onset date of September 1, 2017; (2) his "traumatic brain injury, neurocognitive disorder, and migraines" were severe impairments; however, (3) his combination of impairments, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404. (R. 18–19). Further, the ALJ found that Mr. Rodriguez had the RFC to perform "a full range of work at all exertional levels" except that he can never climb ladders, ropes, or scaffolds and can never work at unprotected heights or with dangerous machinery. (R. 20). The ALJ also found that Mr. Rodriguez can perform simple routine tasks and can make simple work-related decisions. *Id*. As such, (4) Mr. Rodriguez was unable to perform any past relevant work; but (5) he could perform a significant number of jobs in the national economy. (R. 23–24). Therefore, the ALJ determined that Mr. Rodriguez was not disabled under sections 216(i), 223(d), or 1614(a)3(A) of the Social Security Act. (R. 25).

## IV.   ISSUES RAISED IN THE PARTIES' MOTIONS

In the Motion for Judgment on the Pleadings, Mr. Rodriguez argues the ALJ's decision should be reversed on three constitutional grounds: (1) the ALJ was not properly appointed under the Appointments Clause of the United States Constitution; (2) members of the Appeals Council who exercised discretionary review of the ALJ's decision were not properly appointed under the Appointments Clause; and (3) the SSA's structure violates the separation of powers doctrine. [ECF No. 28].

In his Motion for Summary Judgment, Mr. Rodriguez raises two challenges to the ALJ's decision: (1) the ALJ did not assess Mr. Rodriguez's subjective complaints regarding the severity of his symptoms and the resulting effect on his ability to maintain employment; and (2) the ALJ's finding that Mr. Rodriguez can maintain substantial gainful activity is not supported by substantial evidence in the record. [ECF No. 29]. Based on these challenges to the ALJ's decision, Mr. Rodriquez argues that the ALJ's decision should be reversed and that he is entitled to a retroactive award of the maximum disability benefits. *Id.* at 17. In the alternative, Mr. Rodriguez asserts he is entitled to a new administrative hearing. *Id.*

In response to Mr. Rodriguez's Motion for Summary Judgment, the Commissioner filed a Cross-Motion for Summary Judgment and argues that the ALJ's decision should be affirmed because substantial evidence supports the ALJ's determination that Mr. Rodriguez is not disabled, within the meaning of the SSA, and that he can sustain simple work activity. [ECF No. 37, at 2].

## V.    LEGAL STANDARDS[3]

### A.    *Review Of The ALJ's Decision*

Judicial review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence and whether the correct legal standards were applied. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)). Substantial evidence is more than a scintilla but is less than a preponderance. *Id*. (citations omitted); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). It is such relevant evidence that a reasonable person would accept as adequate to support a conclusion. *Buckwalter*, 5 F.4th at 1320. A court must defer to the ALJ's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it. *Id*. A court may not redecide facts, reweigh the evidence, or substitute its judgment for that of the ALJ. *Id*. Although factual findings enjoy such deference, the ALJ's legal analysis and conclusions are reviewed *de novo*. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

### B.    *Motion For Judgment On The Pleadings Standard*

Federal Rule of Civil Procedure 12(c) states that: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Oriental Republic of Uruguay v. Italba Corp.*, No. 21-cv-24264, 2022 WL 2065059, at * 6 (S.D. Fla. June 8, 2022) (Damian, J.) (citing *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014)).

---

[3] The standard of review in SSI cases is the same as the standard for DIB cases. 42 U.S.C. § 1383(c)(3). Consequently, the case law addressing DIB is generally applicable to SSI cases.

"Judgment on the pleadings is appropriate only when a party 'fails to offer any pertinent defense,' not when one defense out of many is challenged." *Pete Vicari Gen. Contractor LLC v. Ohio Cas. Ins. Co.*, No. 17-23733-CIV, 2018 WL 6308695, at *1 (S.D. Fla. Sept. 27, 2018) (Altonaga, J.) (quoting *Vann v. Inst. of Nuclear Power Operations, Inc.*, No. 1:09-cv-1169-CC-LTW, 2010 WL 11601718, at *2 (N.D. Ga. July 15, 2010)). Indeed, "federal courts are unwilling to grant a judgment under Rule 12(c) unless it is clear that the merits of the controversy can be fairly and fully decided in this summary manner." *Id.* (internal quotation marks omitted).

## VI.   ANALYSIS

### A.    *Motion For Judgment On The Pleadings [ECF No. 28]*

Mr. Rodriguez argues that he is entitled to judgment on the pleadings on three counts for declaratory action in his Second Amended Complaint. [ECF No. 28]. He contends the ALJ's decision should be reversed and the case should be remanded for a new hearing and a *de novo* decision from a different ALJ on three separate grounds: (a) ALJ Celaya, who conducted the administrative hearing and issued the underlying agency decision under review, was not properly appointed under the Appointments Clause of the United States Constitution (Count 2); (b) members of the Appeals Council who exercised discretionary review of ALJ Celaya's decision were not properly appointed under the Appointments Clause (Count 3); and (c) the SSA's structure violates the separation of powers because the Commissioner may be removed by the President only "for-cause" (Count 4). *Id.*

The Commissioner responds that (1) the ALJ was properly appointed because he was serving prior to July 16, 2018, when the Acting Commissioner ratified the appointments of all the ALJs then serving; (2) Appeals Council members are not principal officers, and,

therefore, are not subject to the Appointments Clause; and (3) Mr. Rodriguez is not entitled to a new hearing because he has not shown that the SSA's restrictions on the removal of the Commissioner actually caused him harm. [ECF No. 38].

### 1. Whether Mr. Rodriguez is Entitled to a New Hearing Based on His Appointments Clause Arguments

First, Mr. Rodriguez asserts that he is entitled to a new administrative hearing before a different ALJ because the ALJ who rendered the unfavorable decision (ALJ Celaya) was not constitutionally appointed pursuant to the Appointments Clause. [ECF 28, at 2]. Mr. Rodriguez relies on the decision in *Lucia v. Securities & Exchange Commission*, 138 S. Ct. 2044 (2018), in which the Supreme Court held that remand was necessary where an ALJ was improperly appointed under the Appointments Clause at the time the ALJ "heard and decided" the case before him. *Id.* at 2055.

In response to *Lucia*, the SSA issued Social Security Ruling 19-1P, which explained that the Acting Commissioner at the time, Nancy A. Berryhill, had ratified the appointments of all SSA ALJs on July 16, 2018. *See* Social Security Ruling 19-1P, 2019 WL 1324866, at *2 (Mar. 15, 2019) ("To address any Appointments Clause questions involving Social Security claims, and consistent with guidance from the Department of Justice, on July 16, 2018 the Acting Commissioner of Social Security ratified the appointments of our ALJs and approved those appointments as her own.").

Consequently, given that the ALJ's decision was issued on April 7, 2020, and relates to a hearing held on November 6, 2019, Mr. Rodriguez's Appointments Clause challenge is futile because ALJ Celaya was constitutionally appointed at the time of all relevant aspects of the decision under review. *See Page v. Comm'r of Soc. Sec.*, No. 21-cv-258, 2022 WL 1619168 (M.D. Fla. May 23, 2022) ("Because Claimant's application was adjudicated after the Acting

Commissioner ratified the appointments of the current Social Security Administration ALJs, Claimant's contention that the ALJ was unconstitutionally appointed or was unauthorized to act in this case is unavailing."); *see also Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537, 547 n.5 (6th Cir. 2020) ("[T]he Commissioner's ratification of SSA ALJs has cured any Appointments Clause problem with SSA ALJs."); *Probst v. Saul*, 980 F.3d 1015, 1024 (4th Cir. 2020) ("[N]ow that the Commissioner has ratified the appointments of all ALJs as her own, there are no new Appointments Clause challenges brewing in SSA cases."). Thus, the undersigned finds that a new hearing is not warranted based on Mr. Rodriguez's Appointments Clause challenge regarding the ALJ.

Mr. Rodriguez extends his Appointments Clause argument to include the members of the Appeals Council, which reviews the ALJ's decision upon a claimant's request. *See* 20 C.F.R. § 404.955(a). [ECF No. 28, at 18]. This appears to be a novel argument that has not been addressed in this District. In *Kaufmann v. Kijakazi*, 32 F.4th 843 (9th Cir. 2022), the Ninth Circuit held, as a matter of first impression, that the Social Security Act's removal provision, 42 U.S.C. § 902(a)(3), is unconstitutional, but also that it is severable from the remainder of the statute. *Id.* at 848. Therefore, the unconstitutional removal provision "does not affect the *authority* of the underlying agency officials to act." *Id.* at 849 (citing *Collins v. Yellen*, 141 S. Ct. 1761, 1787–88 n.23 (2021)). To the extent the ALJ, the members of the Appeals Council, and the Commissioner all served, at all relevant times, under valid appointments, "there is no reason to regard any of the actions taken by the [SSA] as void." *Id.* (quoting *Collins*, 141 S. Ct. at 1787).[4] Here, Mr. Rodriguez offers no support for a finding that the members of the

---

[4] *See also Brian S. L. v. Kijakazi*, No. 21-cv-00423, 2021 WL 6774946, at *22 (E.D. Va. Dec. 10, 2021) ("Plaintiff argues that . . . the ALJ and Appeals Council lacked 'a lawful delegation of authority under which to adjudicate and decide this disability claim.' Plaintiff offers no

Appeals Council were appointed in violation of the Appointments Clause or that they exceeded the scope of their authority, and, therefore, the undersigned finds that Mr. Rodriguez fails to demonstrate that a new hearing is warranted based on his Appointments Clause challenge regarding the Appeals Council.

### 2. Whether Mr. Rodriguez is Entitled to a New Hearing Based on His Separation of Powers Argument

Mr. Rodriguez contends that the removal provision applicable to the Commissioner, 42 U.S.C. § 902(a)(3), also violates the separation of powers. [ECF No. 28, at 19–27]. In support, Mr. Rodriguez relies on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), in which the Supreme Court held that it is unconstitutional for an executive agency to be led by a single head who serves for a longer term than the President and can only be removed for cause.

The parties agree that the Social Security Act limits the President's authority to remove the Commissioner of the SSA without good cause. [ECF No. 38, at 11]; *see also* 42 U.S.C. § 902(a)(3). But as the Supreme Court more recently explained in *Collins*, the holding in *Seila* should not be misunderstood as giving a party entitlement to relief solely based on an unconstitutional removal restriction. 141 S. Ct. at 1788 n.24 ("[T]hat holding [in *Seila*] does not mean that actions taken by such an officer are void *ab initio* and must be undone.") As the

---

support for this proposition beyond a conclusory argument that the challenged removal statute somehow taints the overall authority of the Commissioner to determine eligibility for social security benefits. As the *Collins* Court recognized, however, there is a distinction between the exercise of authority that an official does not possess and the exercise of proper constitutional authority while subject to unlawful removal conditions. The former is presumptively void while the latter requires a showing of actual and causal harm. Here, there is no indication that either Commissioner Saul or the ALJ or Appeals Council members exercising authority on his behalf were appointed in violation of the Appointments Clause or that they exceeded the scope of their authority." (citations omitted)).

Court explained, absent a constitutional defect in the method of appointment, actions by an agency official are not void based on the existence of an unconstitutional removal restriction. *Id.* at 1787. Rather, a plaintiff seeking relief on this basis must show that the unconstitutional restriction actually caused him harm. *Id.* at 1788–89.

Mr. Rodriguez does not allege any facts that plausibly show that the Social Security Act's statutory tenure protection actually harmed him, nor does he show that the removal restriction affected the ALJ's decision regarding his claim. To the extent the harm, if any, identified by Mr. Rodriguez is the fact that he received unfavorable decisions from the ALJ and Appeals Council pursuant to the delegation of duties to those officers by the Commissioner, who was operating under an unconstitutional removal clause, such generalized harm is not sufficient "as it would apply to virtually every disability case since the enactment of Section 902(a)(3) and would render meaningless *Collins*' requirement of direct harm." *Ramos v. Kijakazi*, No. 21-60105, 2022 WL 1105799, at *7 (S.D. Fla. Jan. 26, 2022) (Snow, J.), *report and recommendation adopted*, 2022 WL 1103254 (Apr. 13, 2022) (Scola, J.). Thus, assuming *arguendo* that the removal provision is unconstitutional, the undersigned finds that reversal or remand of Mr. Rodriguez's claim is not warranted because he has not established how the allegedly unconstitutional provision directly harmed him or had any actual or possible impact on the unfavorable decisions he received.[5]

---

[5] Several courts in this District have reached this same conclusion since the decision in *Collins*. *See, e.g.*, *Ramos*, 2022 WL 1105799, at *7, *report and recommendation adopted*, 2022 WL 1103254 (S.D. Fla. Apr. 13, 2022) (Scola, J.); *Dixon v. Kijakazi*, No. 20-cv-82316, 2022 WL 2908497, at *12–13 (S.D. Fla. May 26, 2022) (Matthewman, J.), *report and recommendation adopted*, 2022 WL 2904549 (July 22, 2022) (Smith, J.); *Ragusa v. Kijakazi*, No. 21-cv-80235, 2022 WL 1479405, at *4–7 (S.D. Fla. Feb. 15, 2022) (Reinhart, J.), *report and recommendation adopted*, 2022 WL 1012898 (S.D. Fla. Apr. 5, 2022) (Cannon, J.); *John v. Kijakazi*, No. 20-61123, 2022 WL 718667, at *4–6 (S.D. Fla. Mar. 1, 2022) (Hunt, J.), *report and recommendation adopted sub. nom.*, *Agnes v. Comm'r*, 2022 WL 715188 (S.D. Fla. Mar. 10, 2022) (Cannon, J.); *Vergara v.*

In sum, Mr. Rodriguez has not demonstrated that he is entitled to a new hearing based on the Appointments Clause challenges to the ALJ's or the Appeals Council's authority nor that he experienced any harm arising from the Social Security Act's removal provision. Accordingly, the undersigned finds that Mr. Rodriguez's constitutional claims fail and recommends that his Motion for Judgment on the Pleadings be denied.

**B.     Cross-Motions for Summary Judgment [ECF Nos. 29 and 37]**

In his Motion for Summary Judgment, Mr. Rodriguez contends that the ALJ's decision should be reversed and that he is entitled to judgment as a matter of law for the following reasons: (1) The ALJ improperly discounted Mr. Rodriguez's testimony regarding the severity of his symptoms and the resulting effect on his ability to maintain employment; and (2) there is a lack of substantial evidence to support the ALJ's finding that Mr. Rodriguez can sustain simple work activity. *See* [ECF No. 29]. The Commissioner filed a Response and Cross-Motion arguing that the ALJ's decision should be affirmed because substantial evidence supports the ALJ's determination that Mr. Rodriguez is not disabled, within the meaning of the SSA, and that he can sustain simple work activity. [ECF No. 37, at 2].

The undersigned discusses each of Mr. Rodriguez's challenges below.

**1.   Whether The ALJ Properly Evaluated Mr. Rodriguez's Subjective Complaints Regarding His Symptoms And Ability To Work**

Mr. Rodriguez first argues that the ALJ improperly discounted his testimony regarding the severity of his symptoms and the resulting effect on his ability to work. (Mot. at 7). Specifically, in his Motion and Reply, Mr. Rodriguez contends that the ALJ failed to consider

*Kijakazi*, No. 20-22964, 2022 WL 769704, at *6–8 (S.D. Fla. Feb. 23, 2022) (Torres, J.), *report and recommendation adopted*, 2022 WL 767125 (S.D. Fla. Mar. 14, 2022) (Williams, J.).

his complaints regarding feeling fatigued and a lack of ability to focus and concentrate for extended periods of time due to the "heavy medication regimen" required for his neurological conditions. (Mot. at 9–11; Reply at 2). In other words, Mr. Rodriguez argues that the ALJ did not consider how the medications' side effects make Mr. Rodriguez "very drowsy," and, consequently, limit his ability to maintain a steady job. Based on a review of the record in this case, the undersigned finds that the ALJ properly evaluated Mr. Rodriguez's subjective complaints of disabling symptoms.

To prove disability based on a claimant's subjective complaints, the claimant must first provide evidence of the medical condition triggering the claimant's alleged symptoms. *See* 20 C.F.R. § 404.1529(a), (b); SSR 16-3p, 81 Fed. Reg. 14,166 (Mar. 16, 2016); *Wilson v. Barnhart*, 284 F.3d 1219, 1225–26 (11th Cir. 2002). Moreover, the claimant must either: (a) provide objective medical evidence confirming the severity of the claimant's alleged symptoms; or (b) show that the claimant's objectively determined medical condition could reasonably be expected to cause the claimant's alleged symptoms. *Id.* If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms, but the claimant shows that his medically determined impairment could reasonably be expected to produce the claimant's alleged symptoms, the ALJ must then evaluate the intensity and persistence of the symptoms to determine whether the claimant's alleged symptoms limit the claimant's ability to work. *See* 20 C.F.R. § 404.1529(c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225–26.

When evaluating whether the claimant's alleged symptoms limit the claimant's ability to work, the ALJ may discredit the claimant's subjective statements if they are inconsistent with the evidence in the record. *See* 20 C.F.R. §§ 404.1629(c)(4) (2017), 416.929(c)(4) (2017); *Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005). The ALJ must show that the

determination is not "a broad rejection" preventing the reviewing court from concluding that the ALJ considered the medical condition as a whole. *Id.*

Here, the undersigned finds that substantial evidence supports the ALJ's credibility determination. The ALJ found that Mr. Rodriguez's medically determined impairments could reasonably be expected to produce his alleged symptoms, so the ALJ proceeded to evaluate whether the alleged symptoms limited Mr. Rodriguez's ability to work. (R. 20–22).

In evaluating the intensity, persistence, and functionally limiting effects of Mr. Rodriguez's alleged symptoms, the ALJ noted several inconsistencies between his subjective complaints and the evidence in the record. (R. 21). As noted below, the ALJ provided specific examples of inconsistencies on which this credibility determination was based, including examples from the objective medical evidence and other evidence in the record. *Id.* The ALJ explained that Mr. Rodriguez's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent because, as the ALJ observed, although Mr. Rodriguez's impairments result in some degree of functional limitation, that limitation is not to the extent alleged in his complaints. *Id.*

The ALJ provided examples of objective medical evidence in the record that conflicts with Mr. Rodriguez's subjective complaints. (R. 21). As the ALJ noted, Mr. Rodriguez reported feeling depressed and anxious, having limited attention, overactive activity level, and hyper-responsive sensory when he was treated at the New Horizons Community Mental Health Center in 2018. *Id.* Yet, his physicians observed that Mr. Rodriguez was fully oriented to time, place, and person and followed directions easily and was cooperative. *Id.* Within three months of treatment, Mr. Rodriguez reported feeling better, his mental status examination improved, and he showed appropriate appearance, unremarkable speech and

thought process, normal motor behavior, fair sight and judgment, and unremarkable memory. *Id.*

The ALJ noted that Mr. Rodriguez's daily activities and abilities are not consistent with the severity of the symptoms he alleges. (R. 21). The ALJ provided examples throughout the record that cast further doubt as to the severity of the work-limiting effects of Mr. Rodriguez's symptoms. *Id.* Specifically, the ALJ noted that Mr. Rodriguez wakes up around 5 a.m., gets dressed without assistance, has breakfast, participates in devotional worship, does housekeeping, including breaking down cardboard boxes, as part of his daily assignments at Miami Rescue, and then showers and takes a nap. *Id.* The ALJ also noted that Mr. Rodriguez works out three times a week and does an hour of cardio exercise, does not need reminders to bathe or get dressed, sets alarms to attend his bible studies twice a day six times a week, reads for thirty minutes three times a week, and does not have any problems getting along with others. *Id.*

Based on psychological evaluations in the record, the ALJ noted that Mr. Rodriguez reported that he is independent with all activities of daily living, including self-care, performing chores, cooking, managing his finances, and shopping. (R. 22). His mental status examination showed appropriate hygiene, cooperative attitude, appropriate eye contact, orientation to all spheres, fluent speech, no evidence of expressive or receptive language impairment, normal motor functioning, fair remote memory, average fund of information, ordinary thought content, and fair insight and judgment. *Id.* Mr. Rodriguez denied current suicidal or homicidal ideations, plans, or intent. *Id.* Whereas he had low average attention and concentration and scored a full-scale IQ of 79. *Id.*

The record reflects the ALJ considered Mr. Rodriguez's traumatic brain injury. The ALJ noted that Mr. Rodriguez was treated at Jackson Health System and reported chronic short-term memory deficits since the head injury in 2016 but was stable in severity. *Id.* The ALJ observed that Mr. Rodriguez denied headaches or seizures and reported that his intermittent headaches are treated by Tylenol or Sumatriptan. *Id.* According to Mr. Rodriguez, his anxiety and depression were well controlled. *Id.* His physical examination showed normal musculoskeletal range of motion and a normal gait. Additionally, a CT scan of the brain showed interval resolution of right frontal subdural hematoma and no acute intracranial hemorrhage. (R. 21–22). The ALJ did specifically note that Mr. Rodriguez was diagnosed with mild cognitive impairment due to his traumatic brain injury. (R. 22).

In his Motion, Mr. Rodriguez relies on several decisions from the Eleventh Circuit in which the Court reversed or remanded cases because the ALJ failed to consider the totality of the evidence or focused on isolated parts of the record to the exclusion of others in denying claims. *See* Mot. at 7–10 (citing *Foote v. Charter*, 67 F.3d 1553 (11th Cir. 1995), and *Swindle v. Sullivan*, 914 F.2d 222 (11th Cir. 1990)). However, a review of the record and the ALJ's decision in this case reflects that the ALJ did not conduct such a narrow review as in those decisions. Instead, the record reflects that the ALJ considered the totality of the evidence and cited or explained most of it in the decision.

The undersigned notes, however, that, in his findings, the ALJ did not specifically reference Mr. Rodriguez's specific complaints made during the 45-minute hearing regarding the side effects of his medications. (*See, e.g.*, R. 51 – Mr. Rodriguez: "Basically I have to take a lot of medications due to my, my brain injuries. And I'm diagnosed with PTSD and bipolar and I'm epileptic. Due to all those meds that are all – I checked the side effects of [with] Cuban

21

coffee, vitamins, nothing, nothing will give me energy, Monster, nothing. It's because there are extreme drowsy is the side effect . . . ."; R. 56 – Mr. Rodriguez: "Usually after lunch . . . I'll take a shower and take a nap because all the medications get me very, very, very drowsy.").

Although, the ALJ does describe and acknowledge multiple times the fact that Mr. Rodriguez takes many medications for his traumatic brain injury, including Sumatriptan for migraines, Depakote for epilepsy and bipolar disorder, and Wellbutrin for anxiety (R. 21), the ALJ does not specifically identify Mr. Rodriguez's complaints regarding the side effects of those medications—most significantly, drowsiness.[6] Nevertheless, the record reflects the ALJ thoroughly considered Mr. Rodriguez's detailed descriptions of his conditions and symptoms, including medications he takes to treat those conditions, as well as reports from treating and evaluating physicians and psychologists regarding Mr. Rodriguez's symptoms.[7] *See Dyer*, 395 F.3d at 1211–12 ("In all events, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision, as was not the case here, is not a broad rejection which is not enough to enable the [reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole." (cleaned up)).

Reviewing the record, the undersigned agrees with the ALJ's determination that Mr. Rodriguez's allegations regarding disabling symptoms are inconsistent with the objective evidence. Initially, the ALJ provided the specific reason for discrediting Mr. Rodriguez's subjective complaints: inconsistencies between his subjective complaints and the available

---

[6] The ALJ does note that Mr. Rodriguez indicates that he naps every day. (R. 21).

[7] The undersigned also notes that Mr. Rodriguez refers to pain levels throughout his Motion and relies on decisions based on the effects of disabling pain. However, the record evidence reflects that Mr. Rodriguez does not suffer from disabling pain (or, if he did, the pain is reportedly resolved by treatment with medications). Instead, Mr. Rodriguez complains of drowsiness, fatigue, and inability to focus as the result of the many medications he takes.

evidence in the record. *See Martin v. Acting Comm'r of Soc. Sec.*, No. 21-11532, 2022 WL 1486387, at *8 (11th Cir. May 11, 2022) ("Here, the ALJ made a clearly articulated credibility finding and pointed to specific reasons for discounting [the claimant's] subjective testimony concerning the intensity and severity of her impairments—namely, that it was inconsistent with the available evidence in the record."). Here, the ALJ articulated this reason by providing specific examples of the inconsistencies supporting his determination regarding Mr. Rodriguez's credibility, including Mr. Rodriguez's presentation, demeanor, and daily activities, the frequency of his symptoms, and the types of medications he takes for his impairments. *See Dyer*, 395 F.3d at 1212 (finding the ALJ "adequately explained his reasons" for discrediting the claimant's pain testimony where the ALJ "considered [claimant's] activities of daily living, the frequency of his symptoms, and the types of and dosages of his medications, and concluded that [claimant's] subjective complaints were inconsistent with his testimony and the medical record").

In sum, the undersigned finds that the ALJ's decision reflects that he did thoroughly consider all of the record evidence, including Mr. Rodriguez's subjective complaints and testimony, and that the ALJ's assessment of Mr. Rodriguez's credibility and finding that Mr. Rodriguez's subjective complaints were inconsistent with the medical record are supported by substantial evidence. In addition, the ALJ's finding that Mr. Rodriguez's subjective complaints of the intensity and limiting effects of his symptoms were not entirely consistent with the medical evidence is supported by substantial evidence. Therefore, to the extent Mr. Rodriguez seeks summary judgment based on the ALJ improperly discounting Mr. Rodriguez's testimony regarding his symptoms and the resulting effect on his employment, the undersigned recommends that Mr. Rodriguez's Motion be denied.

### 2. Whether Substantial Evidence Supports The ALJ's Finding That Mr. Rodriguez Can Maintain Substantial Gainful Employment

Mr. Rodriguez next asserts that in making the RFC finding, the ALJ did not properly consider the impact of medication side effects when assessing Mr. Rodriguez's mental impairments on his functionality and ability to maintain SGA. (Mot. at 14–16). Mr. Rodriguez also contends the ALJ improperly applied the law by failing to require the Commissioner to satisfy its burden of demonstrating that Mr. Rodriguez is capable of engaging in another type of SGA. *Id.* at 12.

When evaluating the intensity and persistence of a claimant's symptoms and determining the extent to which the claimant's symptoms limit the claimant's capacity for work, the ALJ must consider "all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings and statements about how [the claimant's] symptoms affect [him]." 20 C.F.R. § 416.929(a). Some relevant factors to consider when making an RFC determination include treatment, other than medication, that one can receive or has received for relief of one's pain or other symptoms and the type, dosage, effectiveness, and side effects of any medication one takes or has taken to alleviate one's pain or other symptoms. 20 C.F.R. § 416.929(c)(3)(iv)-(v).

Mr. Rodriguez argues that the record evidence offers no reasonable inference that he was capable of maintaining SGA. The undersigned disagrees. Here, a review of the record reflects that substantial evidence supports the ALJ's findings that Mr. Rodriguez can sustain simple work activity. Contrary to Mr. Rodriguez's arguments in his Motion for Summary Judgment, the record reflects that the ALJ did consider Mr. Rodriguez's medications and side effects and determined that there was no indication that Mr. Rodriguez had additional functional limitations due to medication side effects. During the hearing, the ALJ solicited

24

testimony regarding the effect of Mr. Rodriguez's prescribed medications upon his ability to work. (R. 50–53). Mr. Rodriguez testified that he experienced some debilitating side effects due to medication, including fatigue and drowsiness. (R. 50–51, 56). The medical summary report, dated September 5, 2018, prepared by the staff at the New Horizons Community Mental Health Center, indicates that Mr. Rodriguez experienced "[e]xtreme drowsiness" and had to "drink a million expressos to stay awake." (R. 505). Mr. Rodriguez also reported experiencing auditory hallucinations which he attempted to ignore out of fear that his doctor will prescribe more medication. (R. 506).

However, apart from Mr. Rodriguez's own testimony and subjective statements, there is no evidence in the record that these symptoms were caused by his medications or that the effects were so severe that they make him unable to maintain gainful employment. Mr. Rodriguez must introduce evidence supporting his claim that his medication side effects make him unable to work. *See Walker v. Comm'r of Soc. Sec.*, 404 F. App'x 362, 366–67 (11th Cir. 2010) (concluding that the ALJ was not under a duty to elicit further information about claimant's medication side effects where, apart from claimant's subjective complaints, there was no evidence in the record that any of the claimant's other symptoms were actually caused by her medications); *Swindle v. Sullivan*, 914 F.2d 222 (11th Cir. 1990) (rejecting claim that the ALJ failed to consider medication side effects where the claimant barely complained of side effects, and her physicians did not express concern about side effects).

The record reflects that the ALJ considered the foregoing testimony and evidence regarding Mr. Rodriguez's symptoms but also noted that the medical record reveals that the medications had been effective in controlling and improving many of Mr. Rodriguez's symptoms. (R. 21). While on medication, Mr. Rodriguez denied headaches or seizures,

reported his intermittent headaches were treated by Tylenol and Sumatriptan, and reported his anxiety and depression were well controlled. (R. 21). During Mr. Rodriguez's latest psychological evaluation in February 2020, Dr. Amador found that Mr. Rodriguez was alert, his speech was fluent, and his remote memory was fair. (R. 755–59). Dr. Amador did not observe any overt hallucinatory behavior by Mr. Rodriguez. (R. 757). The medical record also shows that Mr. Rodriguez was previously taking Zoloft but asked for it to be discontinued and that he does not take sleeping medication because "it makes you more drowsy." (R. 505).

All in all, the undersigned finds that the ALJ did consider all of the relevant evidence, including the objective medical findings and reports as well as Mr. Rodriguez's statements regarding disabling symptoms and limitations, which, as discussed above, the ALJ found were inconsistent with the objective evidence. As discussed above, the record evidence substantially supports the ALJ's finding that Mr. Rodriguez's subjective complaints about the impact of his medications on his functionality were not fully credible because, even though he experienced side effects, the effectiveness of overall medical treatment and the objective medical evidence documented a steady improvement in his conditions and demonstrated no disabling functional limitations.

Mr. Rodriguez also contends the Commissioner failed to satisfy its burden of demonstrating the types of gainful employment that exist in the national economy that Mr. Rodriguez is capable of performing. The Commissioner argues that the ALJ only had to identify jobs based on Mr. Rodriguez's RFC, which Mr. Rodriguez had the burden of proving. As discussed above, the undersigned finds that the ALJ's finding regarding Mr. Rodriguez's RFC is supported by substantial evidence. Additionally, the record reflects the ALJ considered the evidence regarding the types of employment that Mr. Rodriguez is capable of

in light of his limitations and his RFC, and the ALJ's finding that Mr. Rodriguez is capable of maintaining limited types of work activity that are available in the national economy is supported by substantial evidence. (*See* R. 24). Thus, regardless of whether the burden had shifted to the Commissioner, the evidence in the record indicates they sustained their burden. Therefore, there is no basis to find the ALJ improperly applied the law.

Therefore, the undersigned finds that to the extent Mr. Rodriguez's Motion for Summary Judgment is based on the claim that the evidence does not support the ALJ's RFC finding and finding concerning Mr. Rodriguez's functional limitations resulting from medication side effects, his Motion should be denied.

Thus, Mr. Rodriguez has not demonstrated that the ALJ's determinations are not supported by substantial evidence, and, to the contrary, the undersigned finds that they are. Therefore, the undersigned recommends that Mr. Rodriguez's Motion for Summary Judgment be denied and, for the same reasons, that the Commissioner's Motion for Summary Judgment be granted.

### C. Mr. Rodriguez's Request For Oral Argument [ECF No. 46]

On January 10, 2022, Mr. Rodriguez filed a request for oral argument regarding his Motion for Judgment on the Pleadings. [ECF No. 46]. In his request, Mr. Rodriguez indicated that the Commissioner took no position on whether the Court should set oral argument. *Id.* at 2. The undersigned has considered Mr. Rodriguez's request for oral argument and finds that oral argument is not warranted to address Mr. Rodriguez's Motion for Judgment on the Pleadings in light of the nature of the issues raised in the Motion, all of which are legal questions, and the comprehensive briefing provided by the parties. *See* Fed. R. Civ. P. 78(b) ("[T]he court may provide for submitting and determining motions on briefs, without oral

hearings."); S.D. Fla. Local R. 7.1(b)(2) ("The Court in its discretion may grant or deny a hearing as requested, upon consideration of both the request and any response thereto by an opposing party.").

## VII.    CONCLUSION

For the reasons set forth above, the undersigned finds that the ALJ's decision denying Mr. Rodriguez's claims for DIB and SSI are supported by substantial record evidence and that the ALJ applied the correct legal standards. Therefore, Mr. Rodriguez's claims of errors and of unconstitutionality should be denied.

## VIII.    RECOMMENDATION

Based on the foregoing, the undersigned respectfully recommends that the decision of the Commissioner be **AFFIRMED**, that Mr. Rodriguez's Motion for Judgment on the Pleadings [ECF No. 28], Motion for Summary Judgment [ECF No. 29], and Request for Oral Argument [ECF No. 46] be **DENIED**, and that the Commissioner's Motion for Summary Judgment [ECF No. 37] be **GRANTED**.

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of

justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami Florida, this 18th day of August 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc:   Hon. Marcia G. Cooke
Counsel of Record